**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **CARRINGTON MORTGAGE SERVICES, LLC;** | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| **v.** | § | **MO:25-CV-00071-DC-RCG** |
| | § | |
| **AARON R. ESCAJEDA, TAYLOR M. EVERETT, and THE UNITED STATES OF AMERICA,** | § | |
| | § | |
| | § | |
| | § | |
| *Defendants.* | § | |

## <u>REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE</u>

BEFORE THE COURT is Plaintiff Carrington Mortgage Services LLC's ("Plaintiff") Motion for Default Judgment. (Doc. 30).[1] This matter is before the undersigned United States Magistrate Judge through a standing order of referral pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration, the Court **RECOMMENDS** Plaintiff's Motion for Default Judgment be **GRANTED**. (Doc. 30).

### I.    BACKGROUND

This action was commenced on September 13, 2024, in the 358th District Court, Ector County, Texas, against Aaron Escajeda, Taylor Everett, the Secretary of Housing and Urban Development ("HUD"),[2] and Does 1 through 20, inclusive.[3] (Doc. 1-1). The action was removed to this Court on February 14, 2025. (Doc. 1).

---

1. All page number citations are to CM/ECF generated pagination unless otherwise noted.

2. On March 26, 2025, Plaintiff and HUD filed a Joint Motion for Entry of a Consent Order to streamline the litigation. (Doc. 5). The Court granted the Motion and substituted the United States of America for HUD, granting the relief sought by Plaintiff against the United States and relieving the United States from making any further court appearances. (Doc. 6).

3. On October 20, 2025, Plaintiff voluntarily dismissed Does 1 through 20, inclusive, from the case. (Doc. 25).

The relevant factual allegations are as follows. On April 30, 2020, Aaron Escajeda ("Defendant Escajeda") made, executed, and delivered a Note in which he promised to pay the sum of $314,204.00, with interest. (Doc. 1-1 at 7). Plaintiff is the current owner and holder of the Note. *Id*. Subsequently, the Note was secured by a Deed of Trust executed by Defendants Escajeda and Taylor Everett ("Defendant Everett") (collectively, "Defendants") encumbering a piece of real property. *Id*. The property in question is commonly known as 1813 Canal Street, Odessa, Texas 79765 (the "Property"), more particularly described as:

> LOT 31, BLOCK 1, MARDI GRAS ESTATES, AN ADDITION TO THE CITY OF ODESSA, ECTOR COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT OF RECORD IN CABINET B, PAGE 194-B&C, PLAT RECORDS, ECTOR COUNTY, TEXAS.

*Id*. Plaintiff is the current assignee of the Deed of Trust. *Id*. On May 6, 2021, Defendants also executed and delivered a Partial Claims Mortgage to HUD. *Id*. at 8. Defendant Escajeda became delinquent in the payments due on the Note by failing and refusing to pay the installment due on January 1, 2024, and all installments due after that date. *Id*. Plaintiff notified Defendant Escajeda of his default. *Id*. As of December 30, 2025, to pay off the loan in full, Defendant Escajeda owes $337,494.27. (Doc. 30 at 6).

Summons in this case were issued as to Defendants before the case was removed to this Court. (*See* Doc. 1). On June 10, 2025, Plaintiff filed executed summons as to both Defendants. (Docs. 8, 9). Plaintiff's proof of service shows Defendants were personally served by process server at 1813 Canal Street, Odessa, Texas 79765, on October 22, 2024, and October 24, 2024, respectively. *Id*. On August 26, 2025, the Court issued Orders to both Defendants to show cause why they had not filed a responsive pleading in this case. (Docs. 17, 18). To date, Defendants have failed to answer Plaintiff's Complaint or otherwise make an appearance in this lawsuit. On

October 27, 2025, Plaintiff filed a Motion for Clerk's Entry of Default. (Doc. 27). The next day, the Clerk of Court entered default against Defendants. (Doc. 28). On December 30, 2025, Plaintiff filed the instant Motion for Default Judgment. (Doc. 30).

Plaintiff seeks (1) a money judgment against Defendant Escajeda for $337,494.27 plus post-judgment interest at the legal rate until paid in full; (2) attorney fees and costs against Defendant Escajeda in the total amount of $16,643.80[4]; (3) an order of judicial foreclosure of the Property against Defendants; and (4) that the Property be sold via a public sale pursuant to applicable law. (Doc. 30 at 10). A hearing was held on the instant Motion for Default Judgment on February 10, 2026. (Doc. 34). Accordingly, this matter is now ripe for disposition.

## II.    LEGAL STANDARD

After entry of default and upon a motion by the plaintiff, Federal Rule of Civil Procedure 55 authorizes the Court to enter a default judgment against a defendant who fails to plead or otherwise defend the suit. FED. R. CIV. P. 55(b). However, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Savs. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). Accordingly, "[a] party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). Instead, the district court "has the discretion to decline to enter a default judgment." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

In determining whether to enter a default judgment, courts utilize a three-part test. *See United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384

---

4. Following the hearing on Plaintiff's Motion for Default Judgment, Plaintiff's counsel provided a supplemental affidavit regarding attorney fees and costs. (Doc. 33).

(W.D. Tex. 2008). First, courts consider whether the entry of default judgment is procedurally warranted. *Id*. The factors relevant to this inquiry include:

> (1) whether material issues of fact exist; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey*, 161 F.3d at 893. Second, courts assess the substantive merits of the plaintiff's claims, determining whether the plaintiff set forth sufficient facts to establish his entitlement to relief. *See 1998 Freightliner*, 548 F. Supp. 2d at 384. In doing so, courts assume that, due to its default, the defendant admits all well-pleaded facts in the plaintiff's complaint. *See Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Third, courts determine what form of relief, if any, the plaintiff should receive in the case. *Id.*; *1998 Freightliner*, 548 F. Supp. 2d at 384. Generally, damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

### III.    DISCUSSION

Applying the three-part analysis detailed above, the Court finds Plaintiff is entitled to a default judgment.

### A.  Default Judgment is Procedurally Warranted

In light of the six *Lindsey* factors enumerated above, the Court finds that default judgment is procedurally warranted. First, Defendants have not filed any responsive pleadings or otherwise appeared in this case. Consequently, there are no material facts in dispute. *Lindsey*, 161 F.3d at 893; *Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact."). Second, Defendants' total

failure to respond has brought the adversarial process to a halt, effectively prejudicing Plaintiff's interests. *Lindsey*, 161 F.3d at 893. Third, the grounds for default are "clearly established" since over the course of this case, Defendants have not responded to the summons and Complaint, the Court's Show Cause Order, the Entry of Default, or Plaintiff's Motion for Default Judgment. *See J.D. Holdings, LLC v. BD Ventures, LLC*, 766 F. Supp. 2d 109, 113 (D.D.C. 2011) (finding default judgment is appropriate if defendants are totally unresponsive and the failure to respond is plainly willful, as reflected by the parties' failure to respond either to the summons and complaint, the entry of default, or the motion for default judgment).

Fourth, there is no evidence before the Court indicating Defendants' silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Fifth, Defendants have had over a year to respond to Plaintiff's claims or otherwise appear in this matter. Consequently, any purported harshness of a default judgment is mitigated by Defendants' inaction for this lengthy time period. *United States v. Rod Riordan Inc.*, No. 17-CV-071, 2018 WL 2392559, at *3 (W.D. Tex. May 25, 2018). Finally, the Court is not aware of any facts that give rise to "good cause" to set aside the default if challenged by Defendants. *Lindsey*, 161 F.3d at 893. Therefore, the Court finds default judgment is procedurally warranted under these circumstances.

### B. Default Judgment is Substantively Warranted

Due to the entry of default, Defendants are deemed to have admitted the allegations outlined in Plaintiff's Complaint. *See Nishimatsu Constr.*, 515 F.2d at 1206. Even so, the Court must review the pleadings to determine whether Plaintiff pleaded a sufficient basis for its claims to relief. *See id.* Federal Rule of Civil Procedure 8 guides this analysis:

> Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of this requirement is "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it

> rests.'" The factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (internal citations and footnote omitted) (alteration in original). This "low threshold" is less rigorous than that under Rule 12(b)(6). *Id*.

Here, Plaintiff does not technically plead a cause of action. (*See* Doc. 1-1 at 9). Rather, Plaintiff seeks judicial foreclosure of the Property and a money judgment for the outstanding balance of the Note. *Id*. at 9–10. However, judicial foreclosure is a remedy rather than a cause of action. *U.S. Bank Nat'l Ass'n v. Ross*, No. 15-2385, 2017 WL 2730769, at *1 (S.D. Tex. June 26, 2017) (citing *In re Erickson*, 566 F. App'x. 281, 284 (5th Cir. 2014) (unpublished) (holding that the lender "had a right to pursue judicial foreclosure as a remedy")). Despite this, a majority of courts "appear to cut in favor of reading a breach of contract claim into a judicial foreclosure claim, where only the latter is pleaded." *Ocwen Loan Servicing, LLC v. Kingman Holdings, LLC*, No. 18-CV-1197, 2019 WL 3802167, at *5 (N.D. Tex. May 31, 2019) (collecting cases). The undersigned will do the same and "recommend that the Court find a breach of contract claim subsumed in the pleaded judicial foreclosure claim and that such a reading would satisfy the pleading requirements under Rule 8(a)." *Id*. at *5.

For a Texas breach of contract claim, styled as a judicial foreclosure claim, a plaintiff must show: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Intern., Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, LLC*, 51 S.W.3d 345, 351 (Tex.

Ct. App.—Houston [1st. Dist.] 2001, reh'g overruled)). Here, on April 30, 2020, Defendant Escajeda executed and delivered a Note to the original lender promising to pay the sum of $314,204.00, with interest. (Doc. 1-1 at 7, 12–14). Plaintiff subsequently became the owner and holder of the Note. *Id*. at 7. Defendants then executed and delivered a Deed of Trust to secure performance of the trustor's obligations under the Note; the Deed of Trust was assigned to Plaintiff on May 24, 2024. *Id*. at 7, 16–31, 35. By executing the Deed of Trust, a lien was granted on the Property for any breach. *Id*. at 7. However, payments on the Note have gone unpaid since January 1, 2024. *Id*. at 8. Notice of default and request to cure were mailed to Defendant Escajeda. *Id*. at 8, 39–46. Defendants have directly and proximately caused damage to Plaintiff as the Note remains unpaid. *Id*. Thus, Plaintiff has stated a claim for breach of contract.

### C. Plaintiff's Right to Relief

#### 1. Judicial Foreclosure

As previously stated, damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp.*, 605 F.2d at 857. On February 10, 2026, pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court held an evidentiary hearing covering the issue of remedy. (Doc. 33). Plaintiff seeks a judicial foreclosure of the Property due to Defendant Escajeda's loan default. At the hearing, Plaintiff's counsel pointed to the affidavit of Plaintiff's employee, Brian Cox, which affirms the authenticity of the Note and Deed of Trust. (Doc. 30-1 at 2–7). Further, the affidavit provided that Defendant Escajeda failed to make his January 1, 2024, payment and all subsequent payments that came due under the loan. *Id*. at 5. Finally, it stated Defendant Escajeda is currently indebted $337,494.27 with interest accruing. *Id*. at 6.

"In determining whether a party is entitled to foreclose on a promissory note secured by real property, a federal court applies the substantive law of the forum state, in this case Texas." *U.S. Bank Nat'l Assoc. v. Vallejo*, No. 16-CV-00009, 2016 WL 4400314, at *4 (W.D. Tex. Aug. 16, 2016) (citing *Resolution Tr. Corp. v. Starkey*, 41 F.3d 1018, 1023 (5th Cir. 1995)). "Under Texas law, lenders have a substantive right to elect judicial or nonjudicial foreclosure in the event of a default . . . ." *Douglas v. NCNB Tex. Nat'l Bank*, 979 F.2d 1128, 1130 (5th Cir. 1992). To obtain a judicial foreclosure in this case, Plaintiff is required to show "(1) the existence of a note secured by real property; (2) that some part of the note is due and unpaid; and (3) that the real property subject to the lien is the same property that it seeks to foreclose." *TFHSP, LLC Series 10147 v. U.S. Bank Nat'l Ass'n*, No. 14-CV-2589, 2016 WL 2856006, at *3 (N.D. Tex. Apr. 18, 2016); *Rinard v. Bank of Am.*, 349 S.W.3d 148, 152 (Tex. App.—El Paso 2011, no pet.) ("To obtain a judicial foreclosure, Bank of America was required to demonstrate that the note was a purchase money note, that some part of the purchase money is due and unpaid, and that the property subject to the lien is the same property on which it seeks to enforce the lien."); *Ocwen Loan Servicing LLP v. Smalley*, No. 14-CV-03039, 2015 WL 9873741, at *3 (N.D. Tex. Nov. 6, 2015); *Thomas v. Ocwen Loan Servicing, LLC*, No. 12-CV-447, 2013 WL 30653, at *5 (N.D. Tex. Jan. 3, 2013) (addressing the distinction between a foreclosure of a purchase money loan and a home equity lien). Because the Court finds Plaintiff sufficiently established it is the owner of the Note, part of the Note is due and unpaid, and the property subject to the lien is the same property it seeks to foreclose, Plaintiff can enforce its rights and properly elect to proceed with judicial foreclosure. (*See* Doc. 30-1).

### 2. Post-Judgment Interest

In its Motion for Default Judgment, Plaintiff also requests post-judgment interest at the legal rate until paid in full. (Doc. 30 at 10). "The issue of post-judgment interest on a judgment entered in federal court is governed by federal law." *Lohr v. Gilman*, No. 15-CV-1931, 2018 WL 6199290, at *11 (N.D. Tex. Nov. 28, 2018) (citing *Hall v. White, Getgey, Meyer Co.*, 465 F.3d 587, 594–95 (5th Cir. 2006)); *First Horizon Home Loans v. Sec. Mort. Corp.*, No. 09-CV-2182, 2010 WL 3659908, at *2 (N.D. Tex. Sept. 16, 2010) ("Regardless of whether a cause of action is based on state law or federal law, federal law determines post-judgment interest.") (citing *Bos. Old Colony Ins. v. Tiner Assocs. Inc.*, 288 F.3d 222, 234 (5th Cir. 2002) (noting that federal post-judgment interest applies even in diversity cases)). The statute 28 U.S.C. § 1961 "provides, in pertinent part, that 'interest shall be allowed on any money judgment in a civil case recovered in a district court' and that such 'interest shall be calculated from the date of entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.'" *Lohr*, 2018 WL 6199290, at *11 (citing 28 U.S.C. § 1961(a)). Therefore, Plaintiff is entitled to an award of post-judgment interest at the rate published for the week ending prior to the date of judgment until the date paid.

### 3. Attorney Fees

Finally, in its Motion for Default Judgment, Plaintiff requests attorney fees and costs. (Doc. 30 at 6). Under Texas law, attorney fees may be recovered pursuant to mortgage contracts. *U.S. Bank Nat'l Ass'n v. White*, No. 24-CV-1212, 2025 WL 714250, at *5 (N.D. Tex. Feb. 10, 2025). Here, the Note states that "the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by

9

applicable law. Those expenses include, for example, reasonable attorneys' fees." (Doc. 1-1 at 13).

In the Fifth Circuit, courts apply a two-step method for determining a reasonable attorney fee award. *Combs v. City of Huntington*, 829 F.3d 388, 391 (5th Cir. 2016). First, a court must calculate the "lodestar" amount, which is equal to the number of hours reasonably expended on the case multiplied by the hourly rate in the community for similar work. *Id*. at 392. In performing this calculation, the Court excludes any time that is excessive, duplicative, unnecessary, or inadequately documented. *Id*.; *see Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The party seeking reimbursement of attorney fees bears the burden to provide sufficient evidence that is adequate for the Court to determine reasonable hours expended. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 325 (5th Cir. 1995).

However, once the Court determines the lodestar, it may enhance or decrease the amount of attorney fees based on the relative weights of the twelve *Johnson* factors. *Serna v. Law Office of Joseph Onwuteaka, P.C.*, 614 F. App'x 146, 157 (5th Cir. 2015); *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases. 448 F.2d at 717–19. Notably, "[a] strong presumption exists that the lodestar represents a

reasonable fee that should be modified only in exceptional circumstances." *Payne v. Univ. of S. Miss.*, 681 F. App'x 384, 390 (5th Cir. 2017) (quoting *Pembroke v. Wood County.*, 16 F.3d 1214 (5th Cir. 1994)).

Following the hearing on Plaintiff's Motion for Default Judgment, Plaintiff's counsel, Mr. Jeffery Johnson, provided a Supplemental Declaration Regarding Attorney Fees and Costs, which indicates the 48 hours spent litigating this case are well grounded and justified. (Doc. 33). According to the time records submitted, Mr. Johnson performed 48 hours at an hourly rate of $330. *Id*. Having reviewed Mr. Johnson's declaration, the Court finds this hourly rate is reasonable for an attorney practicing in Mr. Johnson's field with comparable experience to him. *Id*. Thus, Plaintiff should be awarded $15,840.00 in reasonable attorney fees from Defendant Escajeda.

Finally, Plaintiff seeks costs of $803.80. (Doc. 33 at 3). Plaintiff provides the costs went to filing fees, service of process, certified mailing/postage, and other standard out-of-pocket expenses customarily charged to clients in federal litigation. *Id*. Therefore, Plaintiff should be awarded $803.80 in costs from Defendant Escajeda.

## IV.    RECOMMENDATION

For the aforementioned reasons, the Court **RECOMMENDS** Plaintiff's Motion for Default Judgment be **GRANTED**. (Doc. 30). Further, the Court **RECOMMENDS** a final judgment be entered against Defendants as follows:

The Court **FINDS** that the United States of America has appeared in this action for and on behalf of the Secretary of Housing and Urban Development pursuant to 28 U.S.C. §§ 516–519.

11

The Court further **FINDS** that the United States, acting on behalf of the Secretary of Housing and Urban Development, entered into a Consent Order with Plaintiff Carrington Mortgage Services, LLC in which it:

1. Agreed to substitute the United States as defendant in place of the Secretary of Housing and Urban Development; and

2. Affirmatively stated that it does not oppose the entry of judgment in favor of Plaintiff Carrington Mortgage Services, LLC, including the relief of judicial foreclosure and sale of the subject property.

Accordingly, the Court **FINDS** and **ORDERS** that the United States has consented to the relief granted herein, including foreclosure of Plaintiff Carrington Mortgage Services, LLC's senior lien, and that any interest held by or through the Secretary of Housing and Urban Development is subordinate to Plaintiff Carrington Mortgage Services, LLC's Deed of Trust and shall be foreclosed by this Judgment.

The Court further **FINDS** that:

1. Defendants Aaron R. Escajeda and Taylor M. Everett were properly served with citation and process;

2. They failed to answer or otherwise defend this action;

3. The Clerk of Court properly entered default against them pursuant to Rule 55(a) of the Federal Rules of Civil Procedure; and

4. They are not minors, incompetent persons, or members of the armed forces.

By virtue of their default, Defendants Aaron R. Escajeda and Taylor M. Everett have admitted all well-pleaded factual allegations establishing Plaintiff Carrington Mortgage Services, LLC's claims.

The Court **FINDS** that Plaintiff Carrington Mortgage Services, LLC is the lawful owner and holder of the Note and beneficiary of the Deed of Trust encumbering the real property commonly known as 1813 Canal Street, Odessa, Texas 79765, being LOT 31, BLOCK 1, MARDI GRAS ESTATES, AN ADDITION TO THE CITY OF ODESSA, ECTOR COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT OF RECORD IN CABINET B, PAGE 194-B&C, PLAT RECORDS, ECTOR COUNTY, TEXAS.

The Court further **FINDS** that Defendant Escajeda defaulted under the Note, that Plaintiff Carrington Mortgage Services, LLC properly accelerated the debt, and that the unpaid balance owed as of the date of judgment is the following:

1. Principal, interest, fees, and costs: $337,494.27;

2. Attorney fees and costs: $16,643.80; and

3. Post-judgment interest: at the federal rate provided by 28 U.S.C. § 1961.

It is therefore **ORDERED**, **ADJUDGED**, and **DECREED** that:

1. Plaintiff Carrington Mortgage Services, LLC holds a valid, subsisting, and enforceable lien against the Property that is senior and superior to all interests of Defendants Aaron R. Escajeda and Taylor M. Everett and to any interest claimed by or through the Secretary of Housing and Urban Development.

2. Plaintiff Carrington Mortgage Services, LLC is entitled to judicial foreclosure of its Deed of Trust lien.

3. The Property shall be sold at public sale pursuant to this Judgment by the United States Marshal for the Western District of Texas or by such other person as the Court may appoint, in accordance with applicable law.

4. The proceeds of the sale shall be applied in the following order:

13

a. First, to costs of sale;

b. Second, to amounts owed to Plaintiff Carrington Mortgage Services, LLC under the Note and Deed of Trust, including attorney's fees and costs; and

c. Third, to any remaining amounts as required by law.

5. All rights, title, interest, and claims of Defendants Aaron R. Escajeda and Taylor M. Everett, and all persons claiming by, through, or under them, are foreclosed, and they are forever barred from asserting any claim to the Property.

It is **ORDERED** that Defendants Aaron R. Escajeda and Taylor M. Everett or any occupants fail to vacate the Property following the foreclosure sale, Plaintiff Carrington Mortgage Services, LLC or the purchaser at sale may obtain a writ of possession without further order of the Court.

This Judgment finally disposes of all claims and all parties in this action and is a final judgment under Rule 54(b) of the Federal Rules of Civil Procedure.

SIGNED this 23rd day of February, 2026.


_____
RONALD C. GRIFFIN
UNITED STATES MAGISTRATE JUDGE

14

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

In the event that a party ***has not been served*** by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).